All right, before we proceed, I do want to mention that Justice Reyes is the third panel member on this case, and he will be fully participating in the decision, but he is unavailable today, so we will have the tapes recording everything we hear from the lawyers today. So, with that, now, there's three defendants, and are each of you requesting time to present oral? Yes. Okay, so, we're going to call the case. I'm going to ask all the attorneys to step up and identify themselves for the record. So, could you do that? Good morning, Your Honors. I am Margaret Lundahl. I am the attorney for the plaintiff, Eric Hampton. All right. Good morning, Ms. Lundahl. Thank you. Good morning, Your Honors. I'm Victoria Colato. I'm the National Defendant Retirement Plaintiff for the Chicago Transit Authority employee. Would you please spell your last name? I'm Victoria Colato. All right. And you are representing again? The retirement plaintiff. The plaintiff. Thank you. My name is Lisa Riva. I'm because of the Chicago Transit Authority. Would you please use your time? I guess I don't pronounce your name correctly. Forgive me. My name is Lisa Riva. You are David M. Mary I. I. V. C. Thomas R. Rose I. I. V. E. Evian C. Victor. I need just the last name again. The first one is not that difficult. All right. And again, you are representing Chicago Transit Authority. Good morning. My name is Alex Veselinovich. I'm a lawyer for the Defendant Appellee Retirement Health Care Trust for CTA employees. My last name is spelled V as in Victor, E-S-S-E-L-I-N-O-V-I-C-H. Okay. Thank you. All right. So, now, you may be seated, all of you. There was a request that the attorneys, each attorney for the different defendant parties, have an opportunity to present our alignment, which this court agreed to, and, of course, we would. But I would like to suggest, before we begin, that I'm going to allow 30 minutes per side. Not 30 minutes for each defendant. 30 minutes per side. And each defendant will have approximately 10 minutes to present. Now, I don't know if you've already discussed this, that you might be, you know, allotting your time in a certain way. Certainly, all the parties' defendants take a particular position, which is similar, so could we try not to have overlapping? And also, I would request that the parties' defendants, before we begin, consider whether or not, if this person has standing under the 2007 agreement, what other issues would remain as far as the circuit court. So, keep that in mind, and with that, we're going to begin with Ms. Lundahl. Ms. Lundahl, you make many arguments in your brief. Pardon me?  Now, I'm going to ask you to begin with one of the arguments in which you indicate that Mr. Hampton was not represented by the unions under the 2007 agreement. You do indicate that in your brief, but I want you to begin today following through with that argument. All right? Oh, yes. I was a little puzzled about why, when this has been before you, before you actually needed our argument. Well, how do you mean this has been before? Well, the Matthews case was here. Well, it was, but this isn't the Matthews case. And before you begin, would you like to take some time off for your rebuttal arguments today? That would be fine. Okay. I'm not going to need the whole thing. I'm a popular member of my congregation for filling in for the pastor, because I never take the full 20 minutes for the sermon. Okay. May it please the court, my name is Margaret Lundahl, and I am the attorney for Eric Hampton, who is the plaintiff in this case. He was employed by the CTA and was an employee from the time he was employed, which I believe was 1978, until his last day, which was December 31, 2006. Okay. So the circuit court and the plaintiffs all say he lacked standings because of the Matthews decision, which said, divided people into retirees and current employees or people who retired after the contract was in effect. But my position on that is that the actual Matthews decision defines them as people who were represented by the union and members of the bargaining unit. So, pursuant to the terms of the actual contract, it only applies to employees. Mr. Hampton was a retiree on January 1, 2007. Therefore, he wasn't covered by that. And why wasn't he? Because they specifically say you have to be an employee. The first page of the contract defines the scope of the contract as involving being between the units representing the current employees and the employer. And doesn't the contract also provide specifically that retired employees are not employees under this bargaining agreement? I don't know that the contract itself says that. No. Because I'll refer you to the record. See page 438. Okay. Where it says, it is not intended to include temporary employees as defined by the Board of Trustees provided for here and after. Retired employees are not included except as provided in Section 20. Section 20 doesn't apply here at all. And the Illinois Supreme Court in Matthews specifically indicated that when it reached its decision. So, does that refresh your memory? Yes, thank you. All right. And part of what Matthews said was those people who didn't have standards didn't have standing because they had other options. Because they were represented by the union. They could be with the union. They could find remotes. And neither of those are available to retirees. So, that's why we say that he did not retire under the 2007 contract. Okay. I don't really want to get to all of my practical stuff about, well, you know, he was retired. That contract wasn't even a gleam in someone's eye at that point even though he had that effective date. All right. And you're assuming, aren't you, that his last day of work was December 31st or before. But either way, the last day he was considered a working employee was December 31st. That's correct. 2006. And then on January 1st, 2007, he was actually a retired employee. That's correct. That's his status. He's a retired employee January 1, 2007. Right. All right. So, I don't know if there's anything else you want to know about that. I think you can, if you have further arguments to make, go ahead. Not on the standing issue. Okay. Because that's the whole case pretty much. Correct. Didn't the trial judge, in fact, dismiss all of Mr. Hampton's claims because he found essentially that since there wasn't, since he had no right to contest the 2007 bargaining agreement, that he actually could never stay a cause of action. He could never really plead a cause of action. Yes. That was all a matter of standing. Yes. But isn't that essentially, did he really go through each of the defendant's complaints and say anything about a failure to plead? Or was it really based entirely on his conclusion that since he couldn't plead a cause of action under the 2007 agreement, that he would never be able to plead a cause of action? Yes. All right. But, you know, I don't, you know, he wasn't pleading under the 2007 agreement, but under the 2004. Yes, his position was that he was an employee who worked his last day under the 2004 agreement and that he's like the first class or maybe he's in his own class. Because Mayorkas said the class one were individuals who had retired before January 1st, 2007, and the class two plaintiffs were individuals who were either current employees or had retired after January 1st, 2007. Yes, which leaves the interesting question of, because his first day of retirement was January 1st, whether he was in which class or the other, I think that's some of the argument, was the use of the language in there. Because both the appellate courts that considered it used before January 1st and after January 1st, and they keep saying he retired on January 1st. So that's some of the- But isn't it really more a matter of whether or not on January 1st, 2007, whether he was either an employee and therefore part of class two or his status was clearly that of a retired person, a retired employee on January 1st. And if he was a retired employee, he was no longer represented by the bargaining unit. He had no one to represent him. He couldn't challenge this through the typical grievance process because he was no longer an employee. He was retired. Yes. And that's your position. That's my position on that. And you're going to take what? Do we want to do that and deal with it? Or do you want to say you can't? Well, you know, there were- Remember, I don't do very much of this, and I have a cold, and I'm going to do this as quickly as I can. All right. So there were additional arguments in the answering briefs for each of the three dependents, which I dealt with in my reply brief, and I don't know. I think all of them-I don't know that I need to say anything more than that. Those positions are not sustainable because of the language I unfortunately kept quoting, like ignoring the need for single spacing limited. And then if he has standing, there's no problem with the declaratory judgment, and there also isn't a problem with the constitutional issue because he has standing to raise it. Okay. Then the plan, in their brief, raised the issue of his beneficiary designation form signed in 1978, which was not something in front of the Supreme Court because- It didn't have that document. And, you know, I said a number of things that I thought made that not an irrevocable promise to let the plan do whatever they wanted. You know, I didn't read it that way. It's not in there anymore. He filed later documents with that title, but do not include that promise. And, you know, if that was intended at this point by the parties to be his irrevocable promise- It needs more than simply it's there. You would need to know what he was told and what his intentions were and what their intentions were, especially since they did not raise this matter in the Matthews case until all arguments in the Supreme Court, which is kind of, you know, like an afterthought to me. Okay. So I do have problems with also the way the plan was modified as authorized because it was changed prior to the execution of the 2007 CDA. And, you know, so there's a question of fact as to whether that was in the contemplation of the parties when they made the contract. And, of course, it says it's revocable and he did revoke it, so why is that paragraph not revoked too, basically? Then the third defendant had a couple of additional arguments. The trust says they are not party to the CDA and therefore can't reach a contract because they don't have contracts. They just get billions of dollars for some reason that has nothing to do with any contract. What I said was, well, that wasn't an argument that the Matthews court decided because they affirmed to reach a contract against the plan and the trust. So, and he was, they inherited the administration of the benefits that are part of the plan. They actually mentioned in the 2007 plan, which is an interesting thing because it didn't exist on January 1st, 2007. And I'm not sure, I did mention in my reply brief, because I have noticed it earlier, but there is a provision that allows for employees hired before September, whatever it is, 2001, who have 25 years of continuous service to get the health care benefits as long as they retire prior to the execution of the successor to the 2007 contract. So, you know, I don't really know what that means. What they had in mind is that a man did three or four times since the original alleged thing that came out of collective bargaining. So, it's not part of the collective bargaining. So, you know, if we start to look at the things that were not part of collective bargaining, I'm not entirely certain Heaton doesn't apply because then it was the fact that this was the result of collective bargaining that made it not Heaton but something else. You're going to have to sum up. That's the only thing. All right. I don't need. Okay. Thank you, Ms. Long. Thank you. May I please report? Good morning. My name is Victoria Pilato and I represent Defendant Appley Retirement Plan for Chicago Transit Authority Employees. I have a question. Yes. If your position is that on January 1, 2007, Mr. Hampton was retired. He retired effective January 1, 2007, yes. I mean, was he a retired employee on January 1, 2007? He was an employee on January 1, 2007? No, he retired on January 1, 2007. So, I mean, is he retired on January 1? He's employed and retired, yes. Employed in order to retire is our position. Now, that's really a new one. So, in all of these briefs, you're all saying that he retired effective January 1, 2007. Yes. But you're also saying he was an employee on January 1, 2007? Or was he truly a retired employee? Which is probably, you know, a term that should be precise for all of us. So, really, are you really saying that he was working on January 1? We're going to take all of those questions, Your Honor. Okay. Our argument is that he retired effective January 1, 2007. Yes. And the effective date of the 2007 CDA is January 1, 2007. Absolutely. And that in terms of what the bargaining agreement is, we need to look at the terms of the 2007 collective bargaining agreement. I'm going to go back to that because it's really critical. No, it's critical. Because under the Matthews case, retired employees, the retired employees under that case, as of December 31st, were included in the class one, and they had standing to challenge the 2007. Correct? Retirees who retired under the 2004 CDA had standing to challenge the provisions of the 2007 CDA based on the record before it, correct? Sure. And then those employees that were current employees after January 1st and who had retired after January 1st did not have standing. That is the issue that we're looking at now, Your Honor. I'm talking about what did the Matthews case hold. The Matthews case held that people who retired under the 2007 collective bargaining agreement lacked standing. Okay. Did they say that or did they say that current employees and those who retired after January 1st, 2007, did not have standing to challenge the 2007 agreement because they were represented by a bargaining unit? The Matthews court, Your Honor, was addressing the claims of five plaintiffs. Right. Two of those plaintiffs had retired. Three of them had retired. As for the two that retired under the 2007 collective bargaining agreement, the court dismissed those claims for lack of standing. Okay. So I've heard claims of having retired under the 2007 agreement and affirmed the dismissal. As to the retiree, Williams, who retired under the 2004... When did he retire? June 2006. Okay. Is there anyone in the group of Class II plaintiffs in Matthews that you're aware of? Because you're involved with the Matthews case. I am, Your Honor. Is there a single employee involved in the Matthews case that retired on January 1st, 2007? As the Matthews case was defined and has been now remanded down to the trial court, the class continues to be defined as people who retired before January 1st, 2007. Therefore, it does not include him. Okay. I'm not really... I'm asking you if you're aware. This is a large class, isn't it? The class that was excluded. Was there ever a plaintiff in the Matthews case who was like Mr. Hampton, who retired on January 1st, 2007? Oh, that's your question, Your Honor. Yes, Your Honor. It's my understanding that there are folks who retired on January 1st, 2007. Numerous ones. Honestly, I believe it's somewhere between 20 and 40, and I don't know... So there were a number of people that retired January 1st, 2007. Yes, Your Honor. Okay. Now, my question, again, going back to this, is whether or not Mr. Matthews was a retired employee on January 1st, 2007. It's our position, Your Honor, that he was an employee who retired on January 1st, 2007. His settlement agreement that they attached as Exhibit 5 to the Second Amendment... So you're calling him an employee who retired. That's what the settlement agreement calls him. But he's going to be reinstated solely for the purpose of retiring on January 1st, 2007. Okay. So was he a retired employee or not? Are you saying no to the answer to my question? He was retired? Yes. And he was an employee? Yes. What do you mean? Did he work that day? He did not work that day, I said. So you're saying he's a retired what? He was an employee who retired on January 1st. Okay. But you refused. You absolutely refused to concede that he could ever be described as a retired employee. Upon his retirement, I could call him a retired employee. Well, when was his retirement? Until January 1st. So he was a retired employee? All right. We'll move on. We can move on. We'll move on. We'll move on. You want to call him an employee who retired on January 1st, even though he was retiring. Everyone has put in their briefs that he retired January 1st. So, I mean, you're conceding he retired. You're just saying he was actually still an employee, but he was a retiree, too. So we'll move on from that. Perhaps the reason you want to take that position is because under your own agreement, retired employees are not included in the bargaining agreement. Is that correct or not? That's not correct, Your Honor. Okay. And even though the Supreme Court has fully rejected that in Matthews, they said retired employees are not part of the 2007 bargaining agreement. They have no representation in the union, and therefore they are standing to challenge Avery. Our position, Your Honor, and I understand, I don't want to frustrate you, is that he was part of the bargaining unit because of the effective date of his retirement and because of the effective date of the 2007 agreement. So what does the Supreme Court mean in Matthews when they say that retirees, even those formally represented by the transit unions, are not represented by the trans unions in collective bargaining, cannot vote on proposed collective bargaining agreements and cannot participate in arbitration proceedings between the transit unions and the CTA to determine the terms to be included in a new collective bargaining agreement. Then they say the terms of the 2004 CDA establish that the CTA recognized the transit unions as the sole and exclusive collective bargaining agent for all its employees Following expiration of that agreement, however, Williams and Class I retirees were no longer employed by the CTA and were not represented in subsequent collective bargaining and interest arbitration proceedings. Yes, Your Honor, and in that language, they're addressing employees who retired prior to the expiration of the 2004 CDA. Again, the effective date of his settlement is critical. But in addition to the standing argument, Your Honor, even if you say we're not convinced that he was represented by the union, even though the union negotiated for all employees between January 1, 2007 and December 31, 2011, that's who they were bargaining for. Regardless of when that agreement was executed, Illinois law will respect the effective date of the parties and apply it. What does this statement mean by Matthews Court? Because retirees are not represented in collective bargaining, they have standing to pursue claims for enforcement of benefits granted under a CDA. They cite several cases. And they're referring to the Williams claim that they found was retired with respect to the other. That's actually a general statement of the law that says retirees. It's not. The case that's cited is talking about retirees, the general principle, that when you are retired, you're not represented in collective bargaining. There's the general principle, Your Honor. But they were not referring to this? Is that what you're saying? No, and yet, they affirmed the de finito of the claims of Cynthia Boyne and Charles Brown. And they were retirees. But you're saying, even though all the briefs say his effective retirement date was January 1st, 2017, you're now taking the position that he's not retired January 1st. He's not a retired employee. He's just an employee like everybody else. Your Honor, if we can move on. Your first question was, if we find standing is this over, and we submit that it's not, because the trial court also dismissed the claims under 2615. Sure. And correctly applying Matthews. Matthews looked at the 2004 CBA and said, under the terms of the 2004 CBA, parties were free to open it, negotiate it, and come up with modified terms as of January 1st, 2007. That's exactly what they did. The Matthews court held that one retiree who retired before the 2004 CBA expired on December 31st, 2006, had a claim for benefits under the 2004 CBA. Let me ask you, though. You did say that this didn't apply. But I want to ask you one more time. The contract, the 2004, the 2007, I think this is a fairly standard provision in all of the collective bargaining agreements that the CTA has had for years and years and years. It specifically says, it defines an employee, and it's in the record, C438. It defines employees, okay? Mr. Hanson could be described as a person who, on or after May 16th, 1980, was first employed by the authority, because I think he started in 1978, didn't he? Yes. And he had completed a 12-month continuous service with the authority, and was classified by the authority on its employment roles as a full-time employee. So, first of all, the plan defines employees, okay? It's in the record, C438. But then it says, it is not intended to include bargaining agreements, temporary employees, as defined by the Board of Trustees, and retired employees are not included. Okay? So what does that mean? Well, that sentence actually continues, Your Honor. Yes, it does. Except it's provided in Section 20. And the Supreme Court already talked about that, but threw that out. So my question to you is, is your position now, today, that suddenly this provision does not apply? Your Honor, the 2007 collective bargaining agreement, this is not the collective bargaining agreement. It is the retirement plan agreement that was made a part of that. So, critically, it says retired employees are not included, except it's provided in Section 20. And Section 20 is precisely the provision that Hampton seeks to enforce. Okay. And what is this? It's Section 20.12 of the retirement plan agreement, and that is no longer there. And now that, after the 2007 collective bargaining agreement, What did the Supreme Court mean then when they said that you reliant on Section 20? At this point, Your Honor, that provision is new. After the Matthews decision, I agree with you, they decided that people who, based on the record before it, which is essentially the record this Court has, that employees who retired under the 2004 agreement have standing. It says these two references do not indicate that retirees... We're not seeking to revisit Matthews, Your Honor. I know. But you relied on Matthews for your position. For saying that under the 2007 collective bargaining agreement, which meant that Hampton retired under that agreement, and therefore he lacked standing. The union was negotiating... What does this provision mean that retired employees are not included? Well, the retirement plan agreement actually defines what the contributions that employees have to make, what are the continuous levels of service that an employee has to make, that an employee must do this, an employee can do that for his benefits, that an employee is entitled to... An employee... They're not talking about retirees. They are talking about retirees in Section 20. But again, it's the collective bargaining agreement and who they're bargaining for. And... Be comfortable. What does the case law mean, then, that a retired employee is no longer represented by the bargaining unit? That a person who retires before the effective date of a collective bargaining agreement is not represented. Okay. And do you have a case that you want to cite today for that, now that principle you're citing? That's our position. I know it may be your position, but did you cite a single case that references the language that you're now using? Is there a single case that the Supreme Court referred to, or that you referred to in your briefs, that now is redefining the term of what a retired employee is? And that retired employees don't have collective bargaining agreements. They don't have the union representing them. Is there any case that says that? None other than Matthews, Your Honor. Okay. Where does Matthews say what you just said? We believe that it's in paragraphs 40 and 44. Okay. And where in 44? 44 says the Class 2 plaintiffs, which Matthews has already said, those who retired under the 2007 collective bargaining agreement were represented by unions during the bargaining and arbitration process that resulted in the 2007 CBA. I'm not quoting that, and I should be, specifically. But it is in paragraph 44. And I don't see the language you're talking about. Accordingly, the Class 2 plaintiffs were represented by the transit unions during the bargaining and arbitration process that resulted in the 2007 CBA. I think it's helpful, Your Honor, to look at a, a February 1st retiring. Actually, I would agree with you on everything. If you retired December 31st, 2006, then you're clearly covered by the 2004. You'd agree with that. Of course you would. That's what Matthews says. If you retired January 2nd, 2007, then on January 1st, 2007, you were really still working. In fact, you went in, worked that day, and then the next day you were retired. Mr. Matthews, though, stopped working on the 31st. And on January 1st, it's your position now that he was working. He was an employee. He was an employee who retired that day, which is not a term that I'm familiar with, but that's what you've kind of essentially stated here today, that he's an employee who retired that day. He was actually an employee. Is that, I mean, I think that's your position. So if we interpret the language of Matthews the way you're interpreting it, I think your position would have some strength. So I understand it now. You're saying he really didn't retire on January 1st. He was still working, but then somehow that day he retired, even though he was an employee that day. Your Honor, it's all fiction. This is all pursuant to the settlement agreement. He negotiated. We understand that. The settlement agreement says that he would retire effective January 1st. That day he's a retired employee. To avoid a question of why would he retire a day later when there was all this collective bargaining going on about changing the health benefits. And he was represented by his union in doing that settlement agreement. I agree with you. I hear from the other parties because I think your position is very clear that on the 1st of January his status was actually an employee who retired. And that's just a standing issue. But it's clear, too, that he did not retire on December 31st. I agree with you. Absolutely not. He worked that day. It was his last day of work. And, therefore, he had no claim for benefit under the 2004 site bargaining. All right. We'll hear from the other defendants. Thank you very much, Your Honor. Good morning. Good morning. My name is Alex Veselovich. I'm one of the attorneys for the Pelley Retiree Health Care Trust. What is your position? Did Mr. Matthews retire January 1st or not? He retired January 1st. Is he a retired employee then? Yes, he is. He retired 1st. The significance, if I could, rephrase the question, if I could just state it in the way we see it. One thing that's totally undisputed is that he did retire at some point January 1st. There's no question about it. What do you mean at some point? Well, did he retire effective January 1st or not? Yes. Okay. I mean, I don't know why you're talking about, well, gee, some point in the day he suddenly becomes retired, but before that he was actually an employee. So he's fully represented by the bargaining unit. Yeah. And the other thing that's really not in dispute is that the effective date of the 2007 is January 1st. Right. Matthews makes clear, in our view, and makes it almost a bright-line test, that retirees, retirees, whatever you want to call them, who retire during the effective period of the 2007 CBA lack standing the challenge of change and benefits. And why did they say that? Well, there are a number of reasons in the opinion. Primarily, though, because what? They were union employees. They were represented by collective bargaining. The union, they had representation, and they don't have standing to go in and challenge the CBA when they're already represented by a union, unless the union doesn't properly represent them. Right. But I'd like to make at least our position. Why? It doesn't matter whether it's January 1 or January 2 or January 3. It doesn't matter from our point of view, because the question is, what is the date you retire to trigger the applicable CBA? What is the effective CBA that applies to that retiree? And that's what Matthews looked at most carefully. And they said, if the 2007 CBA applies to you, and that's triggered the day you retire, then you don't have standing. The concern here that we've been doing... Didn't the court, wasn't it very careful to use the following language, that those who retired before January 1st had standing? And then it said, those who retired after January 1st, 2007, did not have standing. Was that their language? I don't think that was the key language. The key language was, when the retiree retired, which is January 1, 2007, was that during the effective period of the 2007 CBA? And here it was. When Mr. Hinton chose to retire, and he did so in the contract, in the settlement agreement, he made a contractual obligation that he wasn't retiring on December 31 or before that. He was retiring January 1. It was clear that that was the date after the 2004 CBA had already expired. It expired December 31, 2006. It's gone. All the complaint here is, is based on the 2004 CBA, not the 2007. Was he an employee working for the CTA on January 1st, 2007? We think that it was a transitional period. We think that day was transitional. So where are you getting this transitional thing? Is there anything in any case that talks about transitional employees? No. There's nothing that talks about that. What they talk about is, what's the effective date of the 2000 CBA, and when did this plaintiff retire? And isn't it a general principle of law that if you're not, you're no longer an employee. You don't have a collective bargaining unit. You're not represented by the union. You can't, you wouldn't have any standing if you had a union representative. With all due respect, I don't think that's what Matthew says. Okay. Because they threw out some plaintiffs in Class 2 that retired after. They didn't say on, but the date, it's never even used in the case. After January 1st. The language wasn't precise. But my question to all of you is that you're subtly saying that Mr. Hampton was an employee on January 1st. He didn't work that day. His retirement became effective. And for all intents and purposes, he was a retired employee. Now, co-counsel says he was an employee who retired that day. I mean, but either he was a retired employee or he wasn't. Now everyone's saying he was in a transition. He was working. He was an employee. But somehow, some point in the day, he suddenly became retired. I think the important point, with all respect, is that he retired. Back in January 1st. I want to say he retired after the 2004 CBA had expired. It was gone. The 2004 CBA was history on the day he retired. Any way you look at it. And that's what drove the decision by Matthews, the bright line. That's what drove, frankly, the trial process. Why did they have standing, the Class 1 plaintiffs? The Class 1? Yeah. Why? I think it was, you know, there was a lot of reasoning to it. I mean, I think that. What was the primary reason? I think that they were no longer part of the bargaining and represented by the union at that point. I think that was part of the reason. Did these go into it at all? I'm reading from the decision. I'm sorry, did what? Just tell me if this is some kind of reasoning the court used or I've got it all wrong. The Illinois Public Labor Relations Act defines public employee as any individual employed by a public employer. Okay, and now I realize you're all going to take the position that he was an employee on January 1st, 2007. That seems to be the line of thought here. It's not in any brief, but now it is. Before, the position was that he retired January 1st, but now it's a position you're taking different, that he was suddenly an employee who at some point transitioned into a retiree that day. Be that as it may, this is what the court said. The Illinois Public Labor Relations Act defines public employee as any individual employed by a public employer. So I'll assume now for purposes of this appeal that all of you are contending he's a public employee on 1st. In addition, the act allows public employees to bargain collectively through representatives of their own choosing on questions of wages, hours, and other conditions of employment. Accordingly, individuals who are not public employees do not have a right to collective bargaining. A union has no obligation to represent retirees who are outside the collective bargaining unit. Oh, and then they cite a case holding that retirees are not employees covered by the collective bargaining agreement. Because retirees are not represented in collective bargaining, they have standing to pursue claims for enforcement of benefits granted under the CBA. So are you saying this was or was not part of the court's reasoning why those employees who retired before January 1st had standing? No, I'm not disagreeing with that. I am saying, if I can make one point, is that the Supreme Court in our view in Matthews drew a bright line that anyone who retired under the CBA in 2007 during the effective period of the 2007 CBA was part of the bargaining unit and lacked standing. That's what they also have. What page did you think that was? I think it's from 46, 47, and 88. Everything I just read is 46. What you said wasn't in there. I think paragraph 88 of the opinion is helpful in that regard. But if you wish, if you have other persons standing, that's fine. I do think that I just would like to address a couple of issues quickly that are peculiar to the trust that were brought up by the plaintiffs' counsel. One is that there is no breach of contract against the trust because this trust was never part of either the 2004 CBA, which is at issue in the case. By the way, it wasn't part of the 2007 CBA. And so the breach of contract... How do the provisions look? And there are issues for each defendant. They should be considered separately. So that's why I asked the parties to address should this court believe he has standing. Your alternative argument would be what, as far as the trust? Well, as far as the trust, let's assume, as I understand it, that you find that he has standing. In our view, that argument could not be reconciled with Matthew's, but I'm going to go forward on that. Then if you find he has standing, I guess the remedy would be to remand the case to the fair court, but not, in our view. On the counts 2 and 3 against the trust, because counts 2 is a breach of contract claim against the trust, and count 3 is a declaratory judgment count, which depends entirely on the breach of contract, for supposedly raising a controversy. So what did the Supreme Court do with the trust in the Matthews case? Well, Anita, that's a good question. I want to clarify that. There was never a breach of contract claim brought against the trust in Matthews. Not once. It wasn't in the complaint. They litigated that for four and a half years. Every amended complaint lacked a breach of contract claim against the trust. The Supreme Court, with all the rulings that made a factual error in 104 of the Matthews opinion, where they claimed, or assumed, that there was a breach of contract claim against the trust, Not so. Not so. So the first time we get a breach of contract claim now is with the Hampton complaint, and we're dealing with it now, but we think there's no basis for it. It would have to be a party to a contract to have breached it. We never were. It goes a little bit more absurdly. We didn't even exist when the 2004 CBA was executed. In this case, the trial said so. He kind of threw everything out, didn't he, at the pleading stage by questioning Mr. Hampton's standing? I think that's a fair statement. I agree with it. He didn't reach some of these other issues on their merits. We raised them in the briefs and arguments. Yes, you did. I do agree that he, on the trust certainly, that he disposed of the case based upon the standing point. Yes. So I don't want to take too much time, but I did just want to say,  Yes, I have one question. What do you suggest we write in reference to your claim? That you write? No. What do we say? Well, our position is that Judge Alibratti's decision with respect to standing should be affirmed. That's one thing that we think should be done to make it consistent with the Nathie's case and with the key undisputed facts here. And that if you disagree with the standing, that you do not remand, that you dismiss the terms 2 and 3 against the trust for the reasons raised below and fully briefed below, which is the breach of contract claim and the declaratory judgment claim. But that's our position. Sure. And your position would follow case law that says that this court can affirm on any basis? Correct. All right. Thank you. I don't know if I answered the question. You answered it good. Oh, thank you. Good morning, Your Honors. This is the Court Irene Butler on behalf of the Chicago Prison Authority. Your Honors, our main position in this appeal is regardless of your ruling on the standing issue, whatever CBA applies here, the dismissal as to the CTA should be affirmed because Mr. Hampton is asserting the very same claims against the CTA that were dismissed with prejudice in Matthews. I would like to ask you one other question. Would you like me to address the standing issues? Because we certainly believe that Mr. Hampton lacks standing. Yes, and I'm going to ask you just as I ask every other attorney appearing here today, was Mr. Matthews retired on January 1st? Mr. Hampton retired on January 1st. I would like to draw Your Honor's attention because plaintiffs are always the master of their own. In the brief of the case, on page 8 of the opening brief, the counsel stated, it is the contract in effect when the employee retires that is the deciding factor. And the circuit court here analyzed the document and found the employee retired most definitely on January 1st, 2007. By his own admission, it is the contract in effect on that date, the deciding factor. That would be 2007 CBA agreement. Well, okay, let me interrupt you. This sentence on page 8 says the defendant's position is that the contract in effect when Eric retired was, this makes no sense at all. There are problems with that sentence because it says became a retiree citing other provisions. I'm not sure what counsel meant. Yes, and there is a certain, you know, complication there which comes from where, because it's what everybody's understanding, and it's actually the set that's not disputed, that whatever date that is expected date of retirement, that's just how, that is the relative situation. If you go to the page before, you know, page 7, Ms. Lundahl states that the basic disagreement in this case is whether Eric gets a date. I think that's a fair description. Then she says this in turn is based on which CBA was in effect, when Eric became a retiree. Eric claims his last day as an employee was December 31st. All three defendants claim he retired under the 2007 CBA because that was when his retirement started. Then she goes on to say the trial judge agreed, having considered the date set by Eric in his original complaint. But then she says this only deals with the first date he was a retiree and does not mean he retired under the 2007 CBA as defendant in the trial court file. I mean, that's essentially her position. I understand that, Your Honor. So the second point, I just wanted to draw your attention to this statement. The second point I wanted to make without repeating what my co-defendants said, is that Paragraph 46, 47, 48, 8, and 9 of the Macon decision talking about, in general, that retirees in general are not representatives of collective bargaining agreement. The sentence that Your Honor cited, because retirees are not representative in collective bargaining and they have stand-ins if there's a claim for enforcement of benefits, that statement was modified somewhat. Can you cut in to that statement in the subsequent paragraph? In particular, Paragraph 49, the court is saying, even though a union is under no obligation to represent the interests of retirees in collective bargaining, it may choose to do so if the retirees agree to such representation. And on the sector of Matthews in the record, there were no documents in the record which would have signaled to the court that retirees in Matthews actually agreed to the representation of the union. Okay, so let me ask you that. You're saying in this case that Mr. Hampton agreed to have the union represent him? Yes. Why would he ever agree? I'm asking you, why would any person agree to a collective bargaining agreement that suddenly imposes a deduction of, how much is it every month for health care benefits? It's about $180. What was being withdrawn every month starting in 2009? $280? I believe there was a number. It's probably about $30,000 that has been withdrawn. So my question to you is, why would any employee who worked for the CTA for some 25 years plus and when they began their employment, they were promised that they would not have to pay for those health care benefits when they retired, okay? So here's an employee. He worked for the CTA for 25 plus years, and as of the end of December 31, 2006, all those individuals that had come before him would not have to pay for the health benefits that were incorporated in the 2007 bargaining unit. Why would any individual in their right mind ever agree to, after they've worked for 28 years and have been promised that their health benefits will not be diminished, why would they suddenly agree to retire the following day or that next year so that they will then be subject to having about $300 every month taken out of their retirement benefit? Because at that point, they didn't know that this was going to be, as I said, the 2007 CBA. Because they didn't know? When CBA negotiated, neither CTAs nor the unions know what the resultant, you know, arbitration level would have held. And usually, there would be... But isn't it on the horizon how dire everything was for the CTA? What was the reason that they decided to change the agreement so that retirees in the future are going to have to contribute about $280 a month or whatever towards their health benefits? Why did they do that? Because the same agreement also provided for... Because they needed to do that, didn't they, in order to survive and be able to... It was not the one-sided method. Your Honor, with all respect, because it was not all negative for active employees and retirees who were all represented in the process of negotiation of 2007 CBA. The same CBA negotiated a $2.5 million payment, one-time payment to the retirees. The same CBA negotiated increases in salaries for employees. So the same CBA imposed financial obligations on the CTA to provide to retirees and to the active employees. But in exchange, it's all give and take. The interest arbitration decided to impose certain obligations on the retirees in contributing to the cost of health care benefits. Now, I'm sorry. That was meant to question why anybody in their right mind would do it. Because usually, CBAs also provide benefits to the active employees and retirees. So now, if your position is, you cite to paragraph 49, though a union is under no obligation to represent the interests of retirees, it may choose to do so if the retirees agree to such representation. So there's two problems to that. On the one side, the union, which has no obligation to do so and generally doesn't represent retirees, they would have to choose to represent him. And two, he would have to agree to such a representation. So on this issue alone, is there a question of material fact as to whether or not, what in this record would ever suggest- Okay, I haven't finished my question. What would suggest that Mr. Hampton ever agreed to representation by the union for the 2007 bargaining agreement? Okay, the common record C185, where the union gives deduction authorization, which is dated December 2006, in which Mr. Hampton authorized expressly the retirement allowance and needed to deduct his union dues from his retirement annuity check so that he could remain a member of the union. So retirees are generally paying dues once they retire? They can opt out. It's a choice. I believe they can opt in. There is no mandatory obligation on them. They can opt in. Am I being asked again? Yes, but I agree with your owner that on this record, it would be an issue on which there should be more discovery on that issue. But there is on this record factual information that was not present in Matthews that shows that Mr. Hampton did agree to be represented by the union in the negotiation of 2007 CBA. There is also an affidavit of a union official stating that the union- And what is that document that you cited? The union gives deduction authorization. It's record C185. But that is also in the record as well. But on C185, you're saying he signed C185- Yes. To be represented by the union. Right. And does it say in regards to what? And that would be an issue for further discovery. But I'm saying it's not black and white. Yeah. There is some indication in the record that he agreed to it. Right. And that's not CTA's main point because as far as CTA is concerned, it doesn't impact CTA how this court decides the standing issue, whether he's governed by 2004 CBA or 2007 CBA, because under either agreement, CTA does not have a contractual or statutory obligation to pay for, to provide Mr. Hampton with health care benefits. But why wasn't the CTA dismissed outright by the Supreme Court? It was. It was dismissed. It was dismissed outright, and as a matter of fact, CTA is not now participating in the proceedings on demand in Matthews, which is now real. Where is the decision to say that all of the allegations in the complaint are dismissed against the CTA defendant? Okay. What happened, if I could have a narrative answer to that question, because that is required. On appeal in this court, you know, this court in Matthews upheld dismissal of a breach of contract and constitutional claim under the Detention and Protection Clause against the CTA, but it reversed, you know, the dismissal of the promissory stock or in declaratory judgment claim. Now, so this court affirmed dismissal of the very same constitutional claim against the CTA that Mr. Hampton is a certain here, and this court ruled that the CTA does not have a contractual or statutory obligation to provide a retiree health care benefit. Everything got appealed to the Supreme Court. The whole case was in front of the Supreme Court. The court left this ruling intact, and then in paragraph 104 of the Matthews Supreme Court opinion, the court stated that those plaintiffs withstanding the rest of the contractual, constitutional, and declaratory judgment claims could proceed on remand against the retirement plan and health care trust alone. The CTA is not mentioned here. The Supreme Court did also tell the court that the promissory stock claim cannot be stated against the CTA. Right. So, the only thing that this... So, as it is, the court affirmed the dismissal of the constitutional claim, reversed the promissory stock claim against the CTA, and also in the plaintiff here is not even asserting the breach of contract claim against the CTA. So we are dealing now here only with declaratory judgment claim. But declaratory judgment is a purely remedial measure, does not create substantive rights. So, in the absence of any substantive underlying claim, such as a breach of contract that has not been alleged, or constitutional claim that is precisely what dismissed and dismissal would affirm in the Supreme Court, there is no underlying claim that would support Mr. Hampton's claim for declaratory judgment against the CTA. And your position is the same for either the previous CTA agreement? Yes, or the newer one. Now, what is your position, you know, and you can sum up, what is your position as to Mr. Hampton's status, although it probably doesn't really matter at this point, as far as you're concerned, whether he's retired or not on January 1st? It does not matter. To the CTA, I understand. It does not matter to the CTA. Again, my position would be in line with the court defendant, that, you know, he retired effective January 1st, you know, whatever that means, and as a matter of practice, that everybody was aware of, and even the union who represented him on the settlement negotiation. It's just, everybody, it's one of those matters that maybe people don't even question until they're presented in the Supreme Court. They could have used the language, if a plaintiff retired before December 31st, 2006, they had stamping. And then they could have said, if a current employee or a retired employee retired on or after January 1st. I mean, that would be different language. It would have a whole new meaning. But that's not the language they use. So, anyway, I understand your position. Do you wish to add anything? Yes, yes. We would ask that regardless of the rule of understanding issue, the claims against the CTA should be dismissed from the entirety and we would ask your Honor to draw from the Circus Court's judgment as to the CTAs. All right. Thank you. Thank you, ma'am. Just briefly, things that... Go in the order that we just heard counsel. Now, her position is the CTA was dismissed previously in Matthews. The CTA affirmed that dismissal. They reversed the promissory statement claim. So what is your response to the CTA's position that they are not a party, that they should be dismissed under either agreement, even if Mr. Hansen has seen it? Just respond to that point. Okay. At this point, I made the argument in my reply brief that they're the source of funding. They actually provided the health care benefits once he retired, until I don't know when that stopped being their responsibility. At page C2182, the letter from the retirement plan says get the benefits from the CTA. So it's not like they were not involved in this at all. It may be that they stopped being involved. Or that the other problem is we're talking about the constitutionality of the provisions that eliminated their responsibility to pay these things, and we claim that that's unconstitutional with respect to existing... Are they currently a defendant in the Matthews case? You know, I'm not trying. The counsel said they weren't. They might not be. But the Matthews case was done on pleadings, and I don't know if anyone raised the issue because the funding and the provision of services and all of this stuff are closely intertwined, whether they would become a necessary party in the event that we actually got to the, you know, and you can add a necessary party at any time. Did Mr. Hampton sign an agreement regarding the deduction of union dues after he became a retired employee? At this point? Well, is there something... He makes a $6 contribution to the union a month. What is that for? To help them be the union. It has nothing to do with actually asking them to represent him. That would not be a part of the contract. Right? That's right. The contract for the $6... Unless you believe he retired. Yeah, well, but, you know, it's... Are there questions of the extent, whether he agreed to union representation? There might be, yes. That's not something... I don't know, you know, the point you were making about what person would do this. I didn't say... No, I'm sorry. I said what person, you know, reasonably, in their right mind, would agree to, you know, pay for health insurance premiums when he's been working for CCA for 25 years, and that wasn't going to be one of the provisions of his retirement. He wouldn't have to pay those. But there was... There's been, you know, an ongoing crisis with all sorts of public employees, employers, and so it has generated a lot of litigation. Right. One of the ways to solve some of these problems is to require that employees begin contributing to their health once they're retired. And then there are other provisions requiring that they suddenly pay more of a percentage of their income to help offset the benefits that they're going to be paid later. So there's all sorts of things that are in play. But this case is really about, you know, I think whether he fits into the categories that were defined in Matthews. Perhaps he does, perhaps he doesn't. Okay. Well, then that would be a question of fact that would need to be explored as if, in the same sense that the beneficiary agreement did not intend to give the plan the freedom to do whatever they wanted in the future. You should know that that $6 does not give you full rights to anything. You still can't file a grievance. You still can't pull out a contract assuming they have a problem doing that. Well, I'm still solving questions of fact. I mean, I agree with you. Right. What about the response to the health care trust? Which point? I'm sorry, I missed it. Well, there was alternative arguments as to why each defendant believed that this court should affirm. Okay. I just wish to point out that the date of retirement is the termination date in paragraph 85 of Matthews. So that's one point that's there. You know, and I understand that's probably why you keep asking that question. The other part is the history of these organizations was such that I think I called the termination date in the contract a hoax rather than an actual thing. I am pointing out that the actual 2014 provision at C2175 says that all terms are, in effect, until in full force until they've been changed, amended. So it's not as if everything stopped on December 31, 2006. It didn't actually expire. Interestingly, it hadn't actually been ratified until after that date. Well, I know. So are we going to argue that the effective date of this provision wasn't January 1? No. No. What I'm saying is you couldn't do those things until it had actually been executed. You know, they could call it that, but you couldn't do any of the things you were supposed to, including doing the health care trust because it didn't exist on January 1. Isn't that just another side of the same argument where you're suggesting that this bargaining agreement wasn't in effect on the 1st of January? No. It wasn't in effect. It just wasn't something they could use because it hadn't even been discussed. The arbitration agreement wasn't until June 2008. Yeah, but doesn't it really apply to every single person that was an employee on January 1, 2007? That's probably true. But he wasn't an employee. I know, but I'm not suggesting that. I'm suggesting that this provision, the new CDA, effective January 1, 2007, applies to all employees and those that retired after January 1. That's the language that's in Matthews. I didn't come up with the language. There's no language in Matthews that talks about on or after. They came up with the language. They also referred to retired employees. I didn't come up with that language. Now there's different language that's being used today. Matthews called them retired employees. In my opinion, the significant issue here is what was Mr. Hampton's status on January 1? Was he an employee or was he a retired employee? If he was an employee, he's clearly bound. If he retired after January 1, then he was bound. I don't know if he retired after, if he was a retired employee. According to the Matthews decision, a retired employee is not represented by the union. They don't have any other way to challenge the agreement because they weren't an employee. Now there's an argument that this agreement has nothing to do with excluding retired employees. Even though it defines an employee, it also defines a retired employee, and it says that the retired employees are not subject to this. Well, I would agree with that. Of course you would. That's your position. The other thing I would point out, they kept talking about him choosing to retire them. He was forced to retire as part of the settlement of his grievance. I don't really think that's an issue here. Okay. But if he was still an employee on January 1, 2007, he owes them $57,000, which is what he was paid in order to no longer be an employee starting on January 1, 2007. All right. Did you have any other questions? No. Anyone? All right. Thank you very much. All right. The matter was well-argued and well-briefed. We will take it under advisement, and the court is adjourned.